We are now recording. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the first case on the docket is 2-21-0683 Q-West Inc. Plaintiff Appellant v. Logan Bland, Defendant Appellee. Arguing for the Appellant, Mr. David M. Maxey. Arguing for the Appellee, Mr. John M. Powell. Let the record reflect that the Appellant is the Defendant rather than Mr. Bland. Mr. Powell represents Mr. Bland, who is the Plaintiff in the trial court below. Yes. Counsel, you may proceed with your first argument. Thank you, Your Honors. May it please the Court, Counsel. We're here today to, based upon the highest jury verdict in Kendall County, I believe, and we are seeking reversal, vacation of the verdict, and remand for a new trial, respectively. The basis of our post-trial motion and appeal is that the trial errors, instructional errors, evidentiary errors, and closing arguments deprived Defendant Q-West of a fair trial. We filed an extensive brief sending forth those arguments, and I'm going to briefly cover some of them this morning. First, we believe that the trial court erred in refusing to instruct the jury on self-defense. This came at the close of Plaintiff's case, but there were still witnesses left to testify. At that point, the defense sought leave to file an amended affirmative defense, including self-defense, and I'm going to couple this also with the amended affirmative defense of contributory negligence. The basis of our self-defense was that Mr. Bland, when he was being taken from the bar that night, turned on the door hosts and started kicking them violently. In order to respond to that, they pushed his legs aside. The jury was never instructed on why they pushed his legs aside. Yes, he was resisting. Yes, there are allegations in the contributory negligence defense that he was resisting, but never was there an allegation that he had attacked the door hosts and assaulted them. Upon being assaulted, they felt the need to move his legs, and they pushed his legs aside. We believe that was fundamental error, prejudice, Q West, deprived Q West of a fair trial because they were not allowed to explain. The jury was not instructed on how to assess why his legs were pushed aside. They were pushed aside because Mr. Bland was aggressive and attacking them. Okay, excuse me. I think I can now be heard. I'm sorry. I mean, he was acting this way almost the entire night, at least at the point where they asked him to go into the manager's office and then come out, and he seemed to be calm for a moment. How are we going to distinguish this, his reaction to everything else that he had been doing that night, especially with his friend about a bar tab or something like that? Yes, yes, yes. No, he was definitely, during the night, he had two instances which resulted in why he was being escorted out of the bar, because he had gotten into a tussle with his friend over the bar tab. They then diffused that the door hosts and the security in the bar, diffused that first situation, and then he did about seven minutes later, there was another conflict. Again, at this point, the door host went up there and said he had to leave. Logan Bland, he's a pretty big guy. He's 200 pounds. I'm not sure how tall he is, but he's a substantial person. He's not somebody that can just like a wallflower and just be pushed aside. One door host escorted him on the right arm and the other door host escorted him on the left arm. Then you had Mr. Whitmer in the front clearing the path, and then you had somebody behind taking him out of the bar. He resisted then. As he got closer to that door, he's like, I'm not going. He resisted. He grabbed the pillar. He then was, they pulled him from that pillar. Then he grabbed the next pillar. He was highly intoxicated, but he wasn't aggressive. He was just resisting them. He's just like, I'm not going out this door. Counsel, my question is though, you're saying there should have been a self-defense jury instruction. I understand why you're saying it, but basically he's been this way all night. Was he defending himself against his friend, Kyle, I guess? How do we distinguish what was self-defense and what was being intoxicated? Well, from our perspective, we were asking for the self-defense as the bar itself, the door hosts were seeking self-defense. We were asking for an instruction that the jury could look at what Mr. Bland did when he went from resisting to being an aggressor. We asked for a self-defense, which would be a complete defense to this action. We wouldn't be here today. There would not be a $50 million verdict because the jury would have been instructed that the bar had the right, those door hosts at the bar had the right to self-defense, to repel his aggression at that time. This was a highly intoxicated person and he was out of control. He started kicking them violently. He kicked Brian O'Hara in the chin. He kicked him in the neck. They were pinned against the wall. They just pushed his legs out of the side. Counsel, why did it take so long to raise this affirmative defense? Why wasn't it raised in the original answer? At the beginning, there was a prior attorney that was handling it. Then the Henshaw firm came in about two weeks before trial. At that point, they were able to get Brian O'Hara and Whitmer on the witness list and they were deposed. Shortly thereafter, the trial started. This evidence came in. It was right after Whitmer's testimony at trial that the defense moved to include the self-defense. At the time, the plaintiff amended their complaint. Plaintiff filed a seventh amendment complaint. Defendants sought to answer it with their affirmative defense of self-defense because the evidence had already come in through Whitmer. The evidence had already come in through O'Hara. At this point, the defense then asked for leave to amend their pleadings to conform to the proof. That's all this was. It was just conforming the pleadings to the proof and it was denied. Did the trial court determine that the plaintiff would be prejudiced if he allowed the amendment? There was no prejudice. In reality, the trial court... I didn't ask you that. I asked you if the trial court made that finding. The trial court did say that the plaintiff would be prejudiced and we believe that was an abuse of discretion because the trial court at the end ultimately seemed to throw up his hands and said, I have no choice here. It's too late. I'm sticking to my guns. Well, counsel, you indicate you come in as your firm and perhaps the blame does not lie at your feet, but you come in two weeks before trial. You take the case as you find it. Aren't you responsible for what was done or not done prior to you filing an appearance? In other words, my point is when you file an appearance, you take the case as it is. Oh, absolutely. The firm was Henshaw, the Henshaw Law Firm. They tried the case. They came in after the original attorney. We were brought in on appeal, Johnson and Bell, just to be clear on that. But yes, they took the case as they had it and they did originally right before trial, they amended the affirmative defenses to add several allegations regarding the resistance allegations. But then after O'Hara testified, they then moved to amend to conform the pleading to the proof. The plaintiff did not- I think the crux of this is when you filed your amended affirmative defenses, why was self-defense? I mean, that's a pretty significant difference from what was filed. Why not just bring in the self-defense? You knew the witnesses, you knew what they were going to say, or presumably you knew what they were going to say. At that time, we were waiting for the evidence to come in at trial and the evidence did come in at trial and then we moved to amend to conform the pleadings to the proofs. And at this point, the plaintiff had already questioned them, the plaintiff's own expert had questioned it. So the evidence was out there and I guess our position here is there was no prejudice suffered to the plaintiff. Did you say that they were deposed before trial? Yes, they were. How soon before trial? Like the weekend before, I believe is the timing there. It was very short. But at least the testimony was known before the trial commenced. Yes, the testimony was known before the trial. But again, it was only a span of maybe two or three weeks after that- a couple of weeks after the testimony was known from O'Hara and then it was put on again for the jury. And when it was put on again for the jury, at that point, that's when- and when plaintiff moved to amend their complaint for the seventh time, defendants sought to answer and add that affirmative defense as self-defense, and there was no prejudice there. I mean, they were allowed to amend their complaint, conform the pleadings to the proof. That's all that QS wanted, was to conform the pleadings to the proof. So basically, you're saying that this self-defense was not an afterthought on behalf of the defense, but it was a strategy to bring- to make the amendment after the testimony? Absolutely not. Absolutely not. It was no strategy. It just happened to be that- it happened to be that at that point, the evidence came in and the defendants, at that point, realized, we're going to- we're going to push this- we're going to clean up our pleadings. We're going to add that affirmative defense because it just came in, and just like the plaintiff added- amended their complaint there and filed a seventh medical complaint, we were just going to answer and file this affirmative defense as part of our it was denied. And we believe it was unfairly, and we- and given the court said he had no choice, he didn't really exercise his discretion anyway. He did- So, would it be your position then if the court does not believe it has discretion, that inherently is an abuse of discretion? In other words, a court must appreciate it can do A or B, and if it doesn't, it's not a proper exercise of discretion? Is that your point? Yes, that's our point, Your Honor. Thank you. Yes. And so, and well, I'm going to- and then linked to that, then, is that also the contributory negligence. So, we- the QS also moved to amend that to include that the door host that Bland- Mr. Bland was kicking at the QS employees, the door hosts. And for the same reasons, the same argument, we believe that was an abuse of discretion because, again, plaintiff moved for lead to file a seven-minute complaint, conform to pleadings to the proof. This evidence was in the record. We moved to conform to pleadings to the proof, and we were denied. Could you go to the other claims of error, please? Absolutely. I'd like to hear a little bit about the failure to include, I think it was subsection F of your- 213. Instructions that you were seeking relating to contributory negligence, and one of those acts were, I believe, is resistance and aggressive behavior in the vestibule. Yes. So, we sought- we sought leave to amend the affirmative defense to include the contributory- to include- amend our contributory negligence affirmative defense to include that he was kicking at the door host, okay? And that- also, we believe that was error because the other allegations were resistance, but they were all related to that incident right there as he's being taken from the bar, being escorted from the bar. And then this was one other allegation. Again, it would have- the jury only found plaintiff 20% liable. Here is a highly intoxicated individual resisting, and then he comes out and then starts attacking the door host. And they weren't aware. The jury was not instructed on that. They didn't know he was attacking the door host. They just thought he was resisting the door host. Well, were you allowed to amend your defenses to include his aggressive behavior? And thereafter, when the instructions were formulated, the court did not allow the instructions to include the allegations that allowed in the amendment? Thank you. No, he didn't. We were not allowed to amend, and then we were not allowed to put forth an instruction on it. So they were both errors is what we're alleging here. Not allowed to amend, and then not allowed to instruct. Okay. And then this- so that's the first errors that I wanted to discuss. I don't have all day, so I'm going to go right to my second, which I think is highly important, is the closing argument. And there were several errors in the closing argument. The first is the use of a demonstrative exhibit, that dummy. Okay. Highly, highly improper, highly prejudicial. Plaintiff's counsel is taking something- Mr. Bland was, like I said, probably six foot, maybe taller, 200 pounds. And plaintiff's counsel picks up a dummy that weighs 30 pounds, and he's manipulating it to show how he believes the accident happened. And that, we believe, was injecting an element into this case that had no business being in closing argument. If he wanted to do that, he could have done that with Dr. Salehi, and you do that on a retrial. But in closing argument was highly, highly prejudicial, and just sunk us. Because that kind of manipulation of a dummy to make it look like a person is showing how he thought that the plaintiff was flipped and broke it on his neck. That was improper, because that wasn't- it was a demonstrative exhibit. It had- it was not admitted into evidence. It never tried to be admitted to evidence, and he says that it's just a prop. That's not just a prop. The cases that we cite in our brief, Robinson and other cases, you can't bring demonstrative exhibits that are not admitted to evidence into a closing argument, and manipulate that. So we believe that was highly prejudicial, and that in and of itself warrants- warrants a new trial, your honors. The next is that the plaintiff alleged that it was hidden- throughout trial he tried to- with Mr. Whitmer, and this is an evidentiary error that we raised in our brief, he tried to insinuate that there was missing video, that the video was being hidden from the jury, that- that it for some reason was not produced by the defendant, and- and that's- and then that was objected to, and the court let it go, and we objected again, and then the court finally said, okay, we're not going to allow that- that sort of questioning in Mr. Whitmer. But then it came to closing argument, and here it comes again. The plaintiff brings it up, insinuating that the defendant was hiding video evidence. Counsel, your time is up. Do the justices have any questions? I do not, thank you. No, thank you. Okay, thank you. Thank you so much. Counsel, you'll have an opportunity to make rebuttal after Mr. Power. Thank you. Thank you. Mr. Power, you may proceed. Thank you, may it please the court. Counsel, Judge Krentz was methodical and reflective in every ruling that he did. You can see in the transcript of proceedings. He let the defense endeavor over our objections to introduce any evidence he could as to potential alternative proximate cause. But how- Counsel, how do you then react to counsel's argument that the judge kind of said, look, I've done everything I can. It's too late. You're not going there. This isn't the right time. Whatever he actually said, how do you react to counsel's statement? As to that would be on the issue of self-defense. And I can speak to that. Absolutely. First of all, if there had been an affirmative defense of self-defense, the six elements would have been articulated early on. And we would have addressed each and every one of those elements with the witnesses. Mr. O'Hara gave an evidence step after the opportunity was given to the defense to amend their affirmative defenses. Nowhere in there did they amend the affirmative defense and raise self-defense. Mr. O'Hara's evidence step went. So there was no way we could have then brought him back on rebuttal, which was one of the arguments made by trial counsel. Secondly, they made this motion, your honors, at the end of all evidence, not at the end of our case, at the end of all evidence. So they were done. We did amend to conform the pleadings to the proof. We did not add a new cause of action. We did not add new elements. We did the factual. What they tried to do is add a new defense that we were deprived of asking the key actors, whether they were actually in fear of their life, whether it was reasonable. What you did see in the transcript though, was Mr. O'Hara said under trust, I could have just stepped away. I would have room to just step away as he was swinging his legs or kicking. I could have just stepped away. That would defeat one of the elements of the self-defense argument that he had reason to respond because he had no choice. He had to do it. But we weren't even apprised of this self-defense argument prior to the close of all evidence. And I think that's why Judge Krentz said, I have no choice. The evidence is done. Didn't you amend your complaint to conform to the pleadings? And one of the allegations was the concept of manhandling the defendant or the plaintiff? I believe the manhandling process was in to begin with, but the words were not in the original complaint. That is a true statement. So you were making a minor adjustment, even though there were allegations of manhandling? There were. It wasn't a separate element. It didn't have six elements to prove it. It didn't shift the burden from the defense to me. I still had the burden to prove that. And this new affirmative defense would have shifted the burden to the defense to put on evidence, evidentiary burden, to put on evidence if he wanted to go forward with that. And deprive me of the right to trust him. This is the defense point that they did. The evidence was already in the trial, all the necessary elements to establish an affirmative defense. It was already heard. And they're asking now just to amend their pleadings to conform with the proof. Well, that's what he's saying, but that's just not the facts in this trial transcript. It doesn't, he doesn't meet the six elements. Plus we didn't know that he was going to amend after he had the opportunity. I just want to put the timing really before your honors. And I know you guys were already aware of it, but the reality is they came in, Henshaw. They had one affirmative defense on file, a contributory negligence. That's it. We moved in limine to bar any amendments that weren't already present. The court considered it and then gave the defense the opportunity to amend their affirmative defenses to anything they thought was appropriate. And that was prior to trial. If they wanted, if they had the strategic idea that they were going to advance this, it was at that time, they had every opportunity and the duty to do so. So we were apprised of the affirmative defenses that was right now motioned. We didn't want to be surprised by new affirmative defenses. We brought it to the court's attention. They gave him the opportunity. So this isn't, we stumbled into it. They were confronted by our motion. They responded to our motion and amended to anything they wanted to in light of the evidence at that time. And they didn't do it. And then we went forward and tried the case. What about the argument indicating that the defendant wanted to include in the instructions to the jury about contributory negligence, the factual aspects of his aggressive behavior relative to his kicking at the bouncers when he was on the ground in the vestibule? Understood. Sure. If you look at their instruction seven and then their instruction seven, eight, seven, eight included kicking at the bouncers, but it also included the affirmative defense of self-defense, which the court denied. The court then indicated it was going to create a court's instruction, which was court's instruction one. At no time did defense offer an alternative to court's instruction one, which included kicking at in the absence of a self-defense instruction. So the only instruction that was presented to this court, which included kicking at, included self-defense, which the court properly refused. They failed to present an appropriate jury instruction on that topic and failed to ask the court to amend the court's instruction to include that. Well, isn't that somewhat implicit? And here's my alternative instructions on this point. The court says, all right, this is what I'm going to do. And that's pretty much the ball game when the court does its own instruction. It would end up being somewhat of a pointless exercise to say, well, could you amend it again? So Your Honor, if the court created it from scratch, I would agree. But that was my proposed alternative, which I thought was conforming to what the court wanted each side to present as an alternative. If you look on the actual transcript, it says plaintiff's instruction, whatever, and it's scratched out because in the transcript that said, judge, I'm not offering this. I'm attempting to create something that I believe Your Honor wanted us to do in light of what your ruling was going to be. So he then scratched it out. And then the transcript of at no time did Mr. Boho or Mr. Adams speak up and say, judge, I think we should include kicking at. They just didn't. Secondly, and to summarize, if you look at their affirmative defenses that did go to them, refused to peacefully leave and physically and forcefully resisted their employees to escort them from the premises. Reading the jury instructions as a whole, they were fairly apprised of resisting and being aggressive, assaulting someone versus resisting. Those are two completely different processes. How do we overlook that in this analysis? I'm not asking you to overlook it. I'm telling you the defense failed to offer jury instruction on it, and they waived it. So I'm really not, Your Honor. There was an opportunity during the jury if you don't tender them, you can't object to their failure to provide them. You can't scream foul if you don't get into the fight and explain what you want. And there was, if you look at the transcript, there was hours of jury instruction discussion, and things were modified where people reached agreement or where the court said, OK, I'm going to do this. And they had the opportunity to do that when they presented their 7A. And they actually talked three separate times about presenting a 7A. They didn't have it ready on day one. It came back on day two. They had them change, and then the final one was submitted. At no time did they ask for courts instruction one to include kicking at, and they never offered instruction that did not have self-defense with kicking at. So they made a decision, and they've waived it. But separate from the instructions, you can see the transcript. I never argued that, or I never said they couldn't argue that they swept the feet to the side. I didn't object to that testimony. I never said they couldn't quote-unquote stop the kicking by pushing it off. But there's a difference between pushing the feet off to the side and picking the legs up and throwing it over and breaking his neck. And on that action, first, they deny it ever happened. So they can't argue it was self-defense because they said that never happened. They're denying the facts, which they now want to argue is their self-defense. No doctor, no medical person said their claim of what they did, which is slide the legs to the side, could proximately cause the injury. Nobody. In fact, they say side to side couldn't. You need a head to chin or a flexion injury to cause that disruption of the spinal cord and dislocation of the spinal cord. The only thing that happened that was sufficient to do that based on the only medical testimony in this case is Dr. Lee and Dr. Salehi. Dr. Lee was the treating neurosurgeon who did the repair. Dr. Salehi was our expert. Both of those doctors said the only way that happened was lifting legs over. Well, I'm sorry. Dr. Lee said it was a significant trauma, flexion, injury, subluxation, dislocation. Doctor, a single event, that's not sliding side to side, that's a bend. Dr. Salehi said that happened at the time they lifted his legs over and threw him out of the bar. So even if you wanted to suggest the kicking out was an event that theoretically should have been given to them, one, they waived it, and two, that event, that sliding could not have been an approximate cause of his injuries and nobody said it was. So that issue would fail. So moving on then, this is a general verdict. And if one of the issues can be supported by the evidence in this case that is not claimed error, then the verdict should be upheld. The very first claim made by the plaintiff in the issues instruction 2001 was used excessive force on the plaintiff. On that topic, even the defendant, Mr. Taft, who's the owns the place, admits that if they broke his neck, it was excessive force. This is the owner of the defendant. The defense expert, Mr. Collins, admitted that if they broke his neck in removing him, he said that very well may be excessive force. He didn't deny it. Our expert, Mr. Carroll, said absolutely it's excessive force. And Dr. Salehi described the force applied and Dr. Lee discussed exactly what that force was. Those facts have nothing to do with any of the other alleged claimed errors in this case. So as a general verdict on that one topic alone, that warrants affirmation. The fact that there's testimony about what might constitute excessive force is somewhat difficult to weigh. If it's from a layman, it may be a little bit more probative if it's done by an expert. But the jury is the trier of fact, and the jury is supposed to assess it. So are you arguing that the defense is precluded from arguing that there was not excessive force because of statements being made or conclusions being made and placed in the record? Or what exactly are you arguing when it comes to statements that are conclusions of the law? Sure. No, Your Honor, I was not suggesting that at all. What my assertion and probably poorly worded was, if the jury's verdict can be supported by the testimony, and there are no errors alleged as to that testimony or that topic, then the verdict should be affirmed. And in this case, on the issue of excessive force, none of the things raised by the defense in their brief have anything to do with the issue regarding excessive force. There was no manual discussed regarding this excessive force. The dummy wasn't used for excessive force. By the way, none of that I believe was inappropriate, but I'm just saying, all those alleged errors have nothing to do with the use of excessive force or the finding that could be related to excessive force. That was based upon the testimony of the witnesses, the use of the video that they saw and the movement of the body in the video with the fractures that were described by Dr. Salehi and the force necessary to fracture the spine. And so I did not mean to imply that because there was testimony supporting that allegation that barred them from raising the defense. They defended it and that was appropriate. What about the argument that they violated their rules and regulations? Sure. I went back and looked at the closing 17 times in my closing. I use the term ordinary care, reasonable care and negligence. It is undisputed. Even the defense, Mr. Boho mentioned in his closing that the rule were appropriate to consider when looking at what to support his argument that they did everything right. So the manual was used by both sides as confirming evidence of what they wanted to advance. They each had experts and Brian Carroll, my expert referenced, again, I went back through the transcript last night in the span of 25 pages, referenced 16 times where he had elements of alleged negligence, which have nothing to do with the case. He said, not because it was a violation, but because it was a good document that if they followed it, this wouldn't happen. One was eject people who are intoxicated. He said separately that it is standard to eject people when they're intoxicated. On cross, Mr. Boho elicited from Mr. Carroll that attempt, I guess, at cross, you wouldn't eject everyone that was intoxicated from your place. And Mr. Carroll said, no, that's not true. If somebody is cut off, they are ejected from our place, period. That's industry standard. It has nothing to do with the manual. And that was raised by Mr. Boho, not me. So the manual was used as a reference tool. It did not establish a separate duty of care. The case they cite has nothing to do with industry standards and then manuals used as evidence of it. Hospital policies and procedures come in all the time. You can trust people on why they violate them or why they didn't follow them, but you still have to have what a reasonably careful person would do. If you have hospital rules and regulations, I don't know that laymen necessarily testify or give an opinion. It's usually experts. Is it not give expert opinions about whether or not the manual conforms with the reasonable industry standards and so forth? Sure. When the defendant owner, Mr. Taft, who's the one that created it, did so by using another bar, which was North Beach. He's familiar with industry standards and customs, and he actually was familiar with North Beach. And he asked them to use that to help them establish the manual. Right in his doubt, right on a trial testimony, he said, I want a uniform rule so that we knew what our employees were expected to do and the conduct which you were expected to conform with. That is in his trial testimony. And that's why he created the manual, because he did not want people to use their common sense or just try to do things haphazardly. That was part of their well-trained defense that they brought forth throughout this entire trial. Your time is up. Are there any other questions from the panel? No, sir. Thank you. No, thank you. Okay. Thank you. Thank you, Mr. Power. Counsel, you may proceed with your rebuttal. Thank you, Your Honors. I think we'll pick up where Mr. Powers left off on the manual. And I think even his oral argument, when you guys, I'm sure you heard it, when you listen to it again, you're going to hear that he admits, he's basically saying that that manual set forth the standard of care, that Mr. Taft, you know, used that manual, and he wanted his employees manual. But the law is clear that the employee manual or employer's manual or rules do not establish the duty of care. And the problem with what happened here is that in closing argument, he misstated the law, interjecting an element into this closing that should not have been there. So I just, at page R2196 in the record, I'm going to quote this, because I know I only have a couple minutes. He says, so remember, we talked about the manual repeatedly. So I just want to go through a few of the things. Remember, I said it was the duty of the defendant to act reasonably in one of those instructions. Right here, it says, and he's pointing to the manual, right here, it says they have a duty and responsibility to take care of their guests, which Logan Bland, which included Logan Bland. So there's no question they had a duty to him. Second, it's against the law to permit an intoxicated person to remain on the premises. That's in their manual. And Tiffany did it and Michael did it. The jury doesn't know that from him about what the duty is, misstating the law, prejudicing the defendant, along with that dummy, and along with claiming that we hid evidence, and along with claiming that, you know, appealing to the jury, saying that Q.S., the defendant, stole his life, stole Mr. Bland's life. A closing argument cannot have that kind of passion and roaring of the sympathy of the jury against a corporate defendant. That's number one. Number two, then he says, he used the sending a message. He says that we've waited five years, that he's waited five years for justice. We're asking you to deliver justice against this corporate entity. And so we believe that that closing argument was so riddled and so prejudicial that we're entitled to a new trial on that basis. And so, and like I said, his argument about the use of the manual was improper to be raising that and imposing a duty from that manual before the jury. That's not, the manual does not impose the duty. The law imposes the duty. The court's going to set that. It doesn't. So he says, well, the jury instruction was up. But he's telling the jury that it's the manual. Look at the manual. They violated their manual. They breached the duty. They violated their manual. That was improper and highly prejudicial. I guess the rest of it, I'm going to rest, I mean, the arguments. What is your response to his statement regarding the trial court's denial regarding the contributory negligence and the kicking as a factor to be considered relative to the evidence? Well, he was claiming that there were two aspects or two elements that the particular instruction had. One was that it was, the kicking was a factor. The other was that the trial court struck the instruction apparently because the terms affirmative defense were in there. Now, my question to you is, why or are you required to file an additional instruction only including the kicking as a contributory negligence factor without the affirmative defense factor? Or have you, as he argues, waived or forfeited your arguments claiming that it should have been included and submitted as an instruction? Well, at this point, Your Honor, as you said, this went through three iterations for set group. They were developing the jury instruction 7A, which was comprehensive, which included those elements of the contributory negligence and included the element of self-defense. It was the instruction that was tendered to the court, tendered to the counsel. This is our instruction. You have your instructions, plaintiff. We have our counter instruction. This is our counter instruction. We stood on that instruction. And then the court came in and said, ah, I'm just going to go with my own instruction. So plaintiff, I'm not going to put some of the stuff you put in yours. Defendant, I'm not going to include these affirmative defenses, which I've already barred. I already told you that I'm not allowing you to amend your complaint to add contributory negligence based upon kicking. I'm not going allow you to amend it to add self-defense. I'm not going to instruct the jury on either of those issues. We put forth a jury instruction that by no means was a way. And then as far as our whole argument here is that we were deprived of fair trial. So whether the general verdict or some of the issues that were being discussed by counsel, it has no relevance. We argue that we were denied a fair trial due to all these errors. I can't even get to them all. There were 17 or 18 points, but I've highlighted the main ones here this morning. And I hope that with reading the briefs, you will, I know you've already known what they are. So on that, I'm going to rest. Thank you. Thank you. Unless you have any questions. I do have one additional question. Counsel was pretty adamant that even if you got self-defense as a contributory negligence topic, or even an affirmative defense to conform to the proofs, his point is that, or at least I believe his point was those elements, all six elements were not in evidence. And so there was nothing to conform to. I would wonder how you would respond to that. Yes. I believe that all six elements were there. One force had been threatened against the defendant. Yes, force was threatened because he turned on them and started kicking them. Two, the danger of harm was imminent. Yes, because O'Hara and Whitmer were pinned against the wall as Mr. Bland, who's over 200 pounds, a big guy starts nailing them, kicking them viciously when he's in a highly intoxicated state. So the danger of harm is imminent. The force threatened against them was unlawful. Yes, it was unlawful because he was asked to be leaving the barn. He was being taken from the bar and then he turned on them and then started kicking them. That was not lawful. They actually called the police 9-1-1 afterwards. Five, that the defendants that Whitmer and O'Hara had an actual belief that A, a danger existed. B, force was necessary to avert the danger. And C, the amount of force used was necessary. All those are questions of fact for the jury. There's no new facts, no new evidence that need to come in to prove those factors. And then finally, the belief of these defendants was reasonable. They reasonably believed that they were in threat of imminent harm by this guy kicking him in the face and in the chin. They could have broken his vocal cords by doing that. So, I mean, Mr. Bland could have. So yes, all the elements were here. All the evidence was in. Mr. O'Hara put that evidence in. Thereafter, Whitmer then testified, I believe. But in any event, they questioned Whitmer about what happened in that room and that vestibule and what the conduct of Mr. Bland was. So here we have a highly intoxicated, aggressive person trying to be escorted from the bar and he turns on them, starts kicking at them. Jury never knows that that's an affirmative, never knows that they can plead self-defense, never know this. They could say that they were self-defending themselves, never know that they were being kicked at and that kicked at was contributory negligence. We believe that we're entitled to a new trial. Do you have any other questions? Happy to answer. I do not have any. Thank you. Thank you. I don't have any other questions either. Mr. Clerk, will you close out the case, please? Thank you. Thank you both for excellent arguments. Appreciate it. The biggest judgment I think I've ever been involved in. Okay. Thank you so much.